**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID HOYOS AMADO,<br><br>                Petitioner,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>                Respondents. | Case No.: 25cv2687-LL(DDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**<br><br>[ECF Nos. 1, 2] |

      Before the Court is Petitioner David Hoyos Amado's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1), and his accompanying Motion for a Temporary Restraining Order ("TRO") (ECF No. 2). Respondents U.S. Department of Justice, Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"), Christopher J. LaRose, Senior Warden of Otay Mesa Detention Center, and Attorney General Pam Bondi, in their official capacities (hereinafter "Respondents") filed a Response in Opposition to Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order (hereinafter "Oppo.") (ECF No. 11), and Petitioner filed a Reply (ECF No. 12). For the reasons set forth below, the Court **GRANTS IN PART**

**AND DENIES IN PART** the Petition for Writ of Habeas Corpus, and **DENIES AS MOOT** the Motion for TRO.

## I. BACKGROUND

Petitioner alleges that on "September 14, 2024, [he] crossed the United States-Mexico border near San Diego, California, without inspection, accompanied by his family, to escape imminent persecution in Colombia." ECF No. 1 at 15; *see also* Oppo. at 7 (citing Declaration of Marcus Vera ¶¶ 5-6). Petitioner was encountered by Border Patrol on September 14, 2024. Oppo. at 7 (citing Decl. of Marcus Vera ¶¶ 5-7). He was arrested and has been detained since then at Otay Mesa Detention Center. Oppo. at 7 (citing Decl. of Marcus Vera ¶¶ 5-9, 16); *see also* ECF No. 1 at 16.

Petitioner was issued an order of expedited removal pursuant to Immigration & Nationality Act ("INA") § 235(b)(1), 8 U.S.C. § 1225(b)(1). Oppo. at 7 (citing Decl. of Marcus Vera ¶ 7). Following a credible fear interview, the asylum officer determined that Petitioner had established a reasonable fear of persecution and was issued a discretionary Notice to Appear in 8 U.S.C. § 1229(a) removal proceedings. Decl. of Marcus Vera ¶¶ 8-9. Petitioner references 8 U.S.C. § 1226(c) in his Petition and accompanying Motion, but the basis for Petitioner's requested relief is that his prolonged detention for over 13 months violates due process. ECF No. 1 at 11-12, 17-19. Specifically, Petitioner argues that his detention violates fundamental due process rights under the Fifth Amendment. ECF No. 1 at 24; *see also* Reply at 1-2. Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), not pursuant to 8 U.S.C. § 1226(c). Oppo. at 7 (citing Decl. of Marcus Vera ¶¶ 9, 16).

On January 9, 2025, Petitioner requested a bond determination from the Immigration Judge ("IJ"), but he withdrew his request at a hearing on January 17, 2025. Oppo. at 7 (citing Decl. of Marcus Vera ¶ 11); *see also* TRO at 3. On September 24, 2025, after a hearing before an IJ, the IJ denied Petitioner's claims for relief and subjected him to a final removal order. ECF No. 1 at 16-17; *see also* Oppo. at 8 (citing Decl. of Marcus Vera ¶ 13). Petitioner claims that the IJ's decision contains multiple

factual and legal errors. ECF No. 1 at 16-17. On October 3, 2025, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"), which is currently pending. ECF No. 1 at 17; *see also* Oppo. at 8 (Decl. of Marcus Vera ¶ 14). As such, the order of removal entered by the IJ will not become administratively final, and cannot be executed, until such time as the appeal is dismissed. Oppo. at 8 (Decl. of Marcus Vera ¶ 15). Petitioner argues that "the delay inherent in the BIA appellate process (averaging 12 to 18 months or more)" means Petitioner faces prolonged detention without any opportunity for bond or release. TRO at 2; *see also* ECF No. 1 at 17.

Based on the above, Petitioner filed the instant Petition and brings the following claims: (1) a "constitutional claim [that his] detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution;" (2) "[his] continued detention violates the Immigration and Nationality Act and the U.S. Constitution." ECF No. 1 at 30-31. Petitioner also requests attorney's fees under the Equal Access to Justice Act. *Id*. at 31. Accordingly, Petitioner "seeks immediate release from custody or, in the alternative, an expedited bond hearing, on the grounds that his prolonged detention for over 13 months without meaningful review violates the Due Process Clause of the Fifth Amendment to the United States Constitution, established principles of international law incorporated into jurisprudence, and binding precedents from the Supreme Court and federal courts." *Id.* at 11-12, 31.

## II.    LEGAL STANDARD

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts, and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A prisoner prevails in her petition for writ of habeas corpus if he shows that "[he] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner . . . .").

## III. DISCUSSION

Respondents argue that "Petitioner is appropriately subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), which permits detention when an immigration officer 'determines that [he is] not clearly and beyond a doubt entitled to be admitted into the country.'" Oppo. at 6 (citing 8 U.S.C. § 1225(b)(2)(A)). Respondents further argue that "Petitioner's mandatory detention pursuant to 8 U.S.C. 1225(b)(2)(A) does not violate the U.S. Constitution and laws." Oppo. at 6-7 (citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138-139 (2020) ("'[A]n alien seeking initial admission to the United States … 'has only those rights regarding admission that Congress has provided by statute.'"). Respondents also argue that "Petitioner has no constitutional right to a bond hearing" because "Section 1225(b)(2)(A) does not provide for a custody determination by this Court or a custody hearing before an immigration judge." Oppo. at 7 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)). Finally, Respondents argue that "even if Petitioner was entitled to bond, Petitioner has withdrawn his only request for such a hearing, failing to exhaust his own administrative remedies before seeking relief in habeas." Oppo. at 15 (internal citation omitted).

### a. Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and

to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

This Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4-5 (S.D. Cal. Sept. 3, 2025); *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025). Therefore, the Court concludes that exhausting administrative remedies would be futile.

b.   **Merits**

Petitioner states that upon his apprehension at the United States-Mexico border, he was immediately detained by ICE under 8 U.S.C. § 1226(c). ECF No. 1 at 16. "Section 1226(c) . . . carves out a class of aliens for whom detention is mandatory. This includes individuals who have committed certain enumerated offenses or who have been involved in drug trafficking or terrorist activities." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 U.S.C. § 1226(c)). Notably, there is nothing in the record to support that Petitioner was charged with any of the enumerated offenses set forth in Section 1226(c) including, for example, burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense. *See* Docket. Accordingly, it does not appear that Petitioner was apprehended under 8 U.S.C. 1226(c).

Respondents contend that Petitioner is "detained in ICE custody pursuant to 8 U.S.C. 1225(b)(2)(A) as an applicant for admission subject to mandatory detention."

Oppo. at 10 (citing Decl. of Marcus Vera ¶ 16). Respondents argue that "Petitioner remains in lawful, mandatory detention during the pendency of his removal proceedings." Oppo. at 10.

The Court will conduct its analysis using the Respondent's argument that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) provides that: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Although Petitioner's application for asylum has now been denied by an immigration judge, because Petitioner has appealed his order of removal it is not administratively final. Accordingly, the Court finds that the sole issue presented is whether, in the circumstances of this case and at this point in time, holding Petitioner to mandatory detention without a bond hearing under 8 U.S.C. 1225(b)(2)(A) violates Petitioner's due process rights.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F.Supp.3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleeman*, 385 F.Supp.3d 1099, 1116-17 (W.D. Wash. 2019).

Respondents primarily rely on three cases to support their argument that § 1225(b) and its provision for mandatory detention provides all the process that Petitioner is due. ECF No. 11 at 12-13. (citing *Thuraissigiam*, 591 U.S. 103, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *Mendoza-Linares v. Garland*, 51 F.4th 1146 (9th Cir. 2022)). The Court is not persuaded.

In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam,* 591 U.S. at 138. The Supreme Court found that the petitioner, as an

applicant for admission, was provided "the right to a determination where he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress had provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge admission, not detention. *See, e.g., Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *3 (S.D. Cal. Sept. 26, 2025) (agreeing with district courts that interpret *Thuraissigiam* "as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *see also Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds that *Mezei* and *Mendoza-Linares* are also distinguishable. *Mezei* involved a noncitizen who was permanently excluded from the United States on security grounds, not a detainee raising their due process rights in the context of detention without a bond hearing. *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, and has appealed his denial of asylum claim, which is currently pending before the BIA. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process). In *Mendoza-Linares*, the Petitioner challenged his negative credible fear determination, which the Ninth Circuit lacked jurisdiction over. *Mendoza-Linares*, 51 F.4th at 1155. While Petitioner's

statements suggest he is not satisfied with the IJ's determination, his Petition before the court does not challenge the IJ's finding. ECF No. 1. Rather, Petitioner seeks release from custody or a bond hearing pending his appeal of the IJ's determination.

Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional. *See Rodriguez Diaz v. Garland*, 53 F.4th at 1203 (noting the lack of guidance from both the Ninth Circuit and the Supreme court as to "constitutional challenges to bond hearing procedures in the immigration detention context."). However, Courts in the Ninth Circuit have taken various approaches to determine whether due process requires a bond hearing in cases of prolonged detention. *See, e.g.*, *Banda v. McAleenan* at 1117 (using a six-factor test to determine when detention becomes unconstitutional in the context of § 1225(b)); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (applying a three-part test); *Lopez v. Garland*, 631 F.Supp.3d 870, 879 (E.D. Cal. Sept. 29, 2022) (applying a different three-part test, considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in the context of § 1226(c)).

This court has used *Banda*'s six-factor test in deciding whether a petitioner's mandatory detention under § 1225(b) has become unreasonable and requires a bond hearing. *See, e.g., Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025); *Gao,* 2025 WL 2770633. We find that *Banda*'s six-factor analysis is most applicable here.

In *Banda*, the court considered the following factors to determine whether prolonged mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."

*Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

The Court first considers the length of detention and likely duration of future detention. The total length of detention to date is considered the most important factor. *Id.* To date, Petitioner has been in detention for approximately thirteen months. Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable. *See, e.g.*, *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (over nine months); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (over nine months). Petitioner's future detention can last several more months or even years during the adjudication of Petitioner's appeal to the BIA. *See Banda*, 385 F. Supp. 3d at 1119 (finding an appeal to the BIA and subsequent judicial review "may take up to two years or longer"). The Court finds this factor weighs in favor of Petitioner.

In considering the conditions of detention, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (second alteration in original) (citation omitted). Petitioner states that he has never committed a crime and came to the United States seeking protection. ECF No. 1 at 27. Yet, Petitioner has spent over thirteen months at Otay Mesa Detention Center which courts have found is "indistinguishable from penal confinement." *See, e.g.*, *Kydyrali*, 499 F. Supp. 3d at 773. The Court finds this factor weighs in favor of Petitioner.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the government. The fourth factor weighs in favor of Petitioner because the record does not indicate that he has caused any undue delays. The fifth factor weighs in Respondents' favor because there is no indication that the government is responsible

for undue delay in the removal proceedings; Petitioner has already had his merits hearing before an immigration judge. Although a decision was issued on September 24, 2025, for Petitioner to be removed, that order is non-final as a result of Petitioner's pending appeal.

In considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Petitioner argues that although he had a hearing before an immigration judge and was denied Petitioner's claims for relief, he argues that the decision "contained several factual errors, such as mischaracterizing the nature, timing and immediacy of threats from Marin." ECF No. 1 at 17.

Specifically, Petitioner contends that he is a medical doctor in Colombia who came to the United States because:

> Petitioner and his family faced targeted threats from Sergio Marin, a former commander of the Revolutionary Armed Forces of Colombia (FARC) who, as of 2025, serves as a congressman in Colombia's National Congress following the 2016 peace accords. Marin's history as a FARC leader implicates him in ongoing networks of violence, and Petitioner's fear of persecution stems from personal encounters and familial ties that placed them in Marin's crosshairs, consistent with documented patterns of post-conflict reprisals against perceived adversaries in Colombia. (internal citation omitted). . . . Petitioner's counsel submitted extensive evidentiary material in support of his applications for asylum, withholding of removal under the Convention Against Torture (CAT), and related relief, including affidavits detailing the threats from Marin, country condition reports, analyses of FARC-related violence in Colombia, legal briefs and corroborating documentation of familial persecution risks. . . . [The IJ] issued a decision denying Petitioner's claims for relief, that contains several factual and legal errors; such as mischaracterizing the nature, timing and immediacy of threats from Marin.

> Specifically, the [immigration] Court appears to have misapprehended the chronology of events and drew improper inferences from the absence of subsequent incidents of persecution, overlooking the fact that Petitioner and his family fled the country immediately after making the initial report to the authorities. The Judge's conclusion that the absence of continued harm undermines credibility disregards this critical context and the evidence demonstrating that departure from the country was a direct and reasonable response to ongoing threats. And interpretive errors, including an overly narrow application of the fear of persecution standard under 8 U.S.C. § 1158(b)(1)(B) and failure to adequately weigh CAT protections against acquiescence by Colombian authorities. The Court minimized the gravity of the threats and failed to recognize that persecution does not require physical harm but may be established through credible threats of violence, intimidation, or other severe forms of coercion. In particular, the Judge disregarded critical contextual evidence demonstrating that the individual responsible for the threats—a sitting congressman—was a former member of the FARC with ongoing ties to dissident groups. This background amplifies both the credibility and the seriousness of the threats, revealing a clear nexus between Petitioner's political opinions and the persecutor's motives. There is no final order of removal at this time, as Petitioner's counsel timely filed a notice of appeal to the Board of Immigration Appeals (BIA) on October 3, 2025, challenging the Immigration Judge's errors of fact and law.

ECF No. 1 at 15-17. The Court finds that Petitioner has asserted a good faith challenge to removal, and this factor weighs in Petitioner's favor.

The Court notes that Petitioner appears to suggest that the Court use the *Mathews v. Eldridge* test. ECF No. 1 at 25. Respondents do not address *Banda* or *Mathews* in their Opposition, but rather argue generally that Petitioner's detention does not violate the Constitution or laws of the United States and that he does not have a right to a bond hearing. *See* generally Oppo. The Court notes that even under *Mathews v. Eldrige* test, the factors support granting Petitioner a bond hearing. First, the Court looks to the "private interest that will be affected by the official action." 424 U.S. at 335. The Court finds that "the private interest affected by the official action is the most significant liberty interest there is – the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2nd Cir. 2024) (citation omitted). Here, Petitioner has been in

detention for over thirteen months, so any incursion on his liberty interest is serious. *Id.* Next, the Court looks to "the risk of an erroneous deprivation risk of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Under § 1225(b)(2)(A), there are no "procedural safeguards" in place to determine whether Petitioner's detention has become unreasonable. Accordingly, an individualized bond hearing at which an IJ can consider the non-citizen's dangerousness and risk of flight would add value. *See, e.g., Black*, 103 F.4th at 153. Finally, the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" also weigh in favor of Petitioner. *Mathews*, 424 U.S. at 335. Respondents argue that "the government retains an interest in assuring presence at removal" and that "Petitioner's continued detention continues to serve its purported immigration purpose" (internal quotation and citation omitted). Oppo. at 13. However, a bond hearing does not impact the Government's ability to assure Petitioner's presence if he is ultimately removed, and the Government can raise any concerns regarding Petitioner's danger to the community or his flight risk at the bond hearing before the IJ. In sum, all three *Mathews* factors favor granting Petitioner a bond hearing.

For the reasons stated herein, the Court finds Petitioner's mandatory detention under § 1225(b) for over 13 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 826 (W.D. Pa. Jan. 26, 2025) (granting petition where petitioner was an arriving alien who had been held in custody pursuant to Section 1225(b) without a bond hearing for almost 10 months, had been granted withholding of removal, and was pursuing an appeal of the denial of asylum). Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Gao*, 2025 WL

2770633, at *5; *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011))). Accordingly, the Court finds that Petitioner's continued detention has become unreasonable, and thus, due process requires that he receives an initial bond hearing.[1]

## IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Writ of Habeas Corpus.[2] The Petition is **GRANTED** as to Petitioner's request for a bond hearing and **DENIED** as to Petitioner's request for immediate release from custody. Accordingly, within **ten (10) days** of the date of service of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge. Because the Court has ruled on Petitioner's underlying writ of habeas corpus, the motion for TRO is **DENIED AS MOOT**. The Petition is **DENIED** in all other respects.

**IT IS SO ORDERED**.

Dated:  November 4, 2025

_____
Honorable Linda Lopez
United States District Judge

---

[1] Petitioner also requests immediate release from custody (ECF No. 1 at 11, 31). Petitioner provides no authority to support his claim that he is entitled to an order of release under his circumstances. Therefore, the Court finds that, for the reasons stated in this Order, the appropriate remedy is an initial bond hearing before an immigration judge.

[2] Petitioner also requests attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), but the Court **DENIES** without prejudice Petitioner's request.